Good morning, Your Honor. Alexander Silver on behalf of Mr. Joseph, the defendant appellate. As you can see, I'm not Peter Wolf, who was originally scheduled to appear. He's at an administrative educational conference in Washington, and I was assigned to argue before Your Honors today. From reviewing the cases, Your Honor, it presents three very distinct but relatively straightforward issues for the court. And I'd like to start with the statute and whether or not the court believed that it had to impose consecutive sentences on the three charges, counts one and two and four. It's our position that basically what the court did and what the government does in its reply brief is read out a word of the statute completely. And as the court obviously knows, when interpreting a statute, it would be improper to read out words of a statute. And in this particular case, the word that's being read out is kind of an odd word to be used in a statute. And the word is the word such. And particularly the statute, when it talks about consecutive sentences, says that... May I just ask you a question? Are you talking about the count for the transaction that appeared on a different day? That's correct. That would be... That's all you're complaining about in the statute? That's correct. Counts one and two involve marijuana for the same marijuana transaction, the bringing it in through the son and then the distributing of the marijuana to another inmate. And those two, you can see, must be consecutive. Absolutely. And this is marijuana on a different day? Right. Okay. Count four was marijuana that was months different, months earlier. And it's our position that... And if that had been brought as a charge months later, it would have been consecutive? No, Your Honor. By then, he would have been serving sentences for the first... for the first two offenses. But it still wouldn't be for such an offense. Well, in any event, he wasn't serving sentences for one and two at the time he was... That's correct. He was serving sentences for one and two. And the way the statute is written, it's clearly wanting to charge and punish people for bringing contraband into a prison. And it has a three-tiered structure. And we concede that the way it's written, that it can charge an inmate, and it can charge an inmate for giving drugs to another inmate, and that those sentences have to be consecutive to each other. But the problem here is that there was a different event involving marijuana, but not the same marijuana involved in counts one and two. And the court clearly felt it had to impose a consecutive sentence. And it did so because it was under the impression that the statute required it. And the problem is, is the word such. Because it is such a... I'm new to this case. I was not the sentencing attorney, and I'm not the attorney who wrote the brief. And you're not Peter Wolf. And I'm not Peter Wolf. So I'm like the third string here. But that actually gives fresh eyes to this. And when I looked at this, originally I'm looking at it going, what are we quibbling really about here? But the problem is this. The word such is a very peculiar and unusual word to put into a statute. And what the government does, and what the court did, is actually read the word out. I don't know why you need the such for your argument. Because that is what gives the court the discretion in count four not to make it consecutive. What I'm saying is without the such, are you talking about the last sentence of paragraph five, number five? Yes, Your Honor. In paragraph C, where it says, by any court for an offense involving such a controlled substance. You're not talking about the last sentence? No, the last sentence doesn't apply here. It's the first sentence. Any controlled substance shall be consecutive to any other sentence imposed by any court for an offense involving such a controlled substance. Okay. And that word such is very important. Because what it's directing is the same substance, the same act. Now why does it mean the same act? Why can't it mean the same substance? Because it would be, it's not the same it's not. That's a government's argument. Such means it's the same substance. But then you could punish someone for bringing, it makes no sense in the context of the statute that if I bring in marijuana on different days and different acts, that that's going to be punished with consecutive sentences. But if one day I bring in marijuana, and the next day I bring in cocaine, and the next day I bring in heroin, that therefore it's different. That that is not a consecutive sentence. Congress seems to be intent on, their objectives seem to be to punish prisoners who bring in controlled substance into prison. That's true. Well, yes. But it has a list of whatever it can be. And it specifically said such a controlled substance. And when it points to such a controlled substance, there has to be a meaning to that. Otherwise it would read any controlled substance. And they didn't write that. Well they do say earlier on in the sentence they say any controlled substance can be brought into a court. Right. And what that has to do with, and our argument about that has to do with is, if I'm, let's say a civilian and I bring in drugs to a prison, I could be charged federally for this offense. And I could be charged state side for this offense. And so what the statute is clearly saying in that case is if I'm charged in two different courts, we want to have a consecutive sentence. We want to punish federally for the wrong you did on the federal side with a consecutive sentence. We don't want to meld it together with the state. That's what they're talking about. Which is why the word such is so distinct and so unique in this statute. Why did they put that in there? Without putting that in there, they could have said any controlled substance or a controlled substance. If you take the word such out, it actually says a controlled substance. It actually does say involving such a controlled substance. Right. And that's the point. If they took, if you took the word such out, which is the way the government reads the statute, involving a controlled substance. I think I mischaracterized the argument. They say any controlled substance I think is their argument. Right. They say any. There are three interpretations. One is your interpretation, which is it has to be the same transaction, same quantity, same drug. That's correct. The middle ground is it has to be the same substance. And the government's position, as I understand it, and they can correct me, is it doesn't matter. Such is sort of surplus, which it means controlled substance. Right. The problem is that if you take the government's point of view, then such means nothing. And these folks who write these statutes supposedly know what they're doing. We're supposed to interpret these statutes. And they put the word such in. And it has to have a meaning. And the courts have said words in a statute have to be given a meaning. You can't read them out. And the government's interpretation clearly reads it out. And I would say the middle ground reads it out. Because it could have been written involving a controlled substance. There's no purpose for the word such in there unless it means the interpretation we're attempting to give it. Because it has to have a meaning. They put it in there. They didn't put it anywhere else in the statute. In the first part of the sentence, it's not in there, when it talks about controlled substance. It's only there. And the only logical reason it's there is the interpretation we propose that it's there for. Now, this argument wasn't advanced in the district court, correct? It was not. The district court So if we say, if we agree with you and say it was error that the district court had discretion, is it plain error? Well, we believe it is. Because we believe it's error, we believe it's plain from the reading of the statute. It substantially changed his sentencing because the court made everything consecutive and increased the sentence as a result of that. And the court has ruled if that happens, then that jeopardizes the fairness and integrity of the sentence. And the government has not even objected to the argument that it's plain error. It's just saying the interpretation is wrong. Do we have to get to this argument if we agree with you on your first argument? The first issue you raised? Tapia issue? Well, my understanding of sometimes the way the court remands and reverses is sometimes the court remands and reverses for an entirely new sentencing. And sometimes it only remands and reverses to correct a particular error. So my position would be the court needs to reach this issue or make it clear that the remand, if the tapia error is there, that it's for an entirely new sentencing. Do you really think there's a tapia error here? Well, Your Honor, again, when I first read this, I'm kind of like, what are we making out of a mountain out of a molehill here? And I've been around for 25 years doing criminal law here. And I happen to like it when judges talk to my clients and give them a lecture at sentencing to try to get them on the right path. Because I also deal with revocation hearings, which we get all the time. And I think the most important person in the courtroom when sentencing occurs is the judge speaking to the defendant. The defendant doesn't care what I say. I'm a public defender. They have no care. They care what the prosecutor says, and they really care what the judge says. So I like it when the judge goes off and starts talking to the client heart to heart and telling them things. The problem here is the court, I think, went too far. And I think the proof in the pudding in this case is the statement of reasons. First of all, the court needs to be aware that when this sentencing occurred, it was three months before the tapia decision. So it didn't have the tapia decision in hand. It had the Supreme Court decision, but it didn't have the Ninth Circuit decision. And so that's one thing. I think the timing was kind of interesting. But also what really made this, I think, an issue here is, and it's not written in the brief, is if you look at the PSR report, Mr. Joseph was given a two-level enhancement for using his child for the use of a minor. So the use of a minor was already included in the punishment in terms of the guidelines. Then the court goes off on the criminal thinking, criminal thinking. We've got to change your criminal thinking. The court says it repeatedly and then departs, varies up. And that's another factor. The court varies up, citing it as an aggravating factor. But in the statement of reasons, and I would ask Your Honors to look at the statement of reasons. It's filed under seal. It's very interesting what the court does. There's a section, paragraph, section that's on page 3 of the statement of reasons, and it's section 6. But first, Your Honor, on page 2 of the statement of reasons, there's section 5, and it talks about departures authorized by the advisory sentencing guidelines. And it asks the court to check off if there was a departure under the advisory guidelines. And nothing is checked off. If you look under 5C, there's a box on the bottom left that says aggravating or mitigating circumstance, which you could check off. And if the judge simply wanted to punish this person because of the use of a child, which obviously the court was concerned about, the court could have justified it under that section. If that was the purpose of the punishment. Well, 5C only deals with departures within the guidelines. There's still this notion that departures and variances have some real discreet meaning. Absolutely. And the commission certainly feels that way. And so 5 deals with the instance where within the guidelines, the judge decides to depart under the criteria, the old, you know, the way we used to think about the guidelines. Absolutely, Your Honor. And that's not what happened. Right. The court didn't depart. It varied. But it could have departed. The point of this is it could have departed. It could have gone under the guidelines and used the son because it's already accounted for under the two-level enhancement. And that under the guidelines is a clear departure. You can take something that you get an enhancement for and you can still depart upward as an aggravating factor. The court didn't do that, which I think speaks a lot about what the court was doing. Then you turn to Section 6, which is the variance section. And under that, the court checks off under 6C all the boxes, and then it gets to the box that I think absolutely now shouldn't even be part of this checklist anymore. Well, I mean, if it's a probationary sentence, that would be fine. If it's a probationary sentence, yes. But this is a prison sentence. Yes. And it checks off to provide the tenant with needed educational, vocational, medical, or other correctional treatment. As a prison sentence, which under TAPIA is no longer, rehabilitation is no longer a factor. So she re-sentences him and eliminates the checkmark. Well, the problem here is Your Honor. I mean, honestly, when I look at this, and I really appreciate your comments about having the judge talk to the defendant, because I grew up under non-guideline sentencing, and attorneys might go in and say, you know, the defendant needs a talking to judge. But now if you do that, you get an appeal like this and say, well, look, it's obvious the judge was biased promoting rehabilitation when the judge shouldn't have. And there's so many drafts for a district court at sentencing. It makes it kind of tough. And as I look at what this judge said, she says, quite frankly, I don't think you need guidance and structure. It's hard to fault the judge for saying that, isn't it? I understand, Your Honor. And what Your Honor just said, well, so she checks a different box. Yeah. And it's the same with our first argument. What we're saying in the first argument, the court made it consecutive when it didn't have to. But we could get a remand and the court could say, it's at my discretion and I'm going to make it discretionary. So what? And that's true. We understand that. In the first argument, we're saying the court thought it had to make a consecutive sentence. We believe the court was wrong. But on remand, the court is at discretion, can. The same is true here. But I view this as different from Tapia era where you're trying to achieve a result based on rehabilitation. Whereas you can say, yes, education would be great and prison is a good thing. I mean, that to me is a slightly different circumstance. Why do you think it's not? Because I think the case United States v. Grant really aids the court and talks about this mistake. Because in Grant, which is cited in the brief, the district court judge went off on bad habit. We have to break you of this bad habit. And the court said, we're going to rehabilitate you. You have a drug and we're going to break you of your bad habits, your thinking. Similar to what happened here. And gave a longer sentence. Now, Grant was an SR case, but it's no different than Tapia. And the court reversed in that case. If you look at what happened in Grant and what the court said, it's almost similar to what happened here. The court was giving a longer sentence to break him of his criminal thinking, to break him of his bad habit. And it's illustrated by how the court checks off the statement of reasons. And that's the problem. The court can go back and perhaps say things differently or perhaps make their point clear. But then we have a stronger argument, and we have a different argument in front of the court, about whether having the two-level enhancement already taken into account for the use of the minor, whether that really is an aggravating factor that should impose a longer sentence or a consecutive sentence, as opposed to we're going to break him of his criminal thinking, we're going to break him of his bad habit. It's not just semantics. There are different arguments to be made, different legal consequences to be made. I'm well over my time, Your Honor.  Thank you. May it please the Court, Jonathan Liu for the United States. Your Honors, I would like to start with the Tapia issue. This case is not Tapia. This defendant's sentence was not increased to make him eligible for rehabilitative treatment or to allow him to complete a treatment program, which is clearly what happened in Tapia and Grant. But that's not the only thing that Tapia deals with. But that was the heart of the decision. In other words, there's clearly a statutory prohibition to use rehabilitation as a purpose for imposing, either deciding to impose a sentence of imprisonment or to determine the length of a term of imprisonment. And that's not what occurred here. Judge Kobayashi made it abundantly clear, both at the sentencing hearing and in the Statement of Reasons in writing, that the reason for imposing a sentence of imprisonment and for imposing a term of imprisonment of 24 months was that she wanted to punish the defendant for using his minor son to introduce contraband into the prison and to encourage him... And she said then to correct him of his... You know, we've got to teach him about... You know, we've got to get this legal... this thinking, this criminal thinking under control. When she's talking about criminal thinking, Your Honor, all Judge Kobayashi is talking about is the defendant's plotting and scheming about ways to commit crimes, such as the one that he had just committed using his son. You know, this was a case where he had talked to the son and recorded phone calls out of the prison. They had come up with this plan to use slippers to hide the drugs. They actually exchanged the slippers at a contact visit. But for the fact that, you know, one of the correctional officers noticed that the defendant had slippers which were not available in the prison commissary, this plan would have succeeded. But this was a complex plan. Not only that, but they then further talked about having payment from the other inmate, Bradley Souza, disguised and sent to a third party, both to provide money to the son to purchase the contraband to bring it to the prison and for him to profit. And in addition, Your Honor, there were conversations between the defendant and his son about how they were going to do this once the defendant got out of jail. Well, Judge Thomas, you may be right. Judge Thomas had made key observations about what was the nature of what happened here, which is this is a check-the-box form, you know. It's this crazy form that the Sentencing Commission designed and developed in order to capture all the information they want so they can publish all their statistics. And also, indirectly, as we now know, by use of this form, they can keep data on individual judges and one can obtain data on individual judges' sentencing. So this form provides a way to collect sentencing data. And it's a check-the-box form, unfortunately. And when I've done this, since this form has been out in use, I mean, it's pretty easy after you do your sentence just to go down and check the boxes without really thinking through what you're doing. And that may have been what happened here. But, you know, maybe on the other hand, judges need to be more careful and more sensitive to what their obligations are. And even though there's this form, you know, you really have to think through what you're doing. Well, I'd like to address that basically on three levels. One, in the Statement of Reasons, Judge Kobayashi, again, reiterates the reasons for the sentence she imposed in this case. And that's in Section 6D on the Statement of Reasons. All right, we got it here. So, I mean, which absolutely mirrors what she said on the record at the sentencing hearing. The second thing I would argue to the Court is, you know, TAPIA, to a certain extent, addresses this situation because it tells district judges what they can do when they are not committing error. I mean, TAPIA clearly says a court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs. To the contrary, a court may properly address a person who is about to begin a prison term about these important matters. And that's... Well, that's all true. Unfortunately, the question is, when you say that a reason for imposing a sentence outside the guideline, the advisory guideline system, is to provide the defendant with needed educational or vocational training, medical care or other correctional treatment, which you can't do. And the answer to that is what? I mean, we said in TAPIA we take a district judge at his word. And if he said that aloud, there'd be no question it violated TAPIA, if he said, this is one of my reasons. So he checked a box that says, this is one of my reasons, which I think leaves us with the problem of saying, if a district judge checks a box, we can ignore it because he's just checking a box. Or we can say, when he checks a box, he's held to what he did. He said it was a reason for the sentence. He can be sympathetic to the fact that he probably didn't really mean that that was one of the reasons, but he said it was. Well, Judge, most respectfully, if checking that box constitutes TAPIA error, this form needs to be changed. Because this happens hundreds, if not thousands of times a day in federal courts across the country. Well, I hope they're not checking that box in federal courts. And I would hope the form was changed after TAPIA. Because, I mean, in this- I wouldn't interfere with the judge's tick-catering function. You know- You can get the form changed. If anybody will listen to me. The judges hate these forms. And I can understand why. I mean, it really is a minefield. And in this case, you know, nothing- What occurred with the recommendations that the judge made for this defendant in this case were very typical of what happens in sentencing every single day. I mean, the judge recommended, at the defendant's request, educational and vocational training. Right. You better get to your consecutive- The second argument. With respect to- Not that this hasn't been interesting. The second issue. The 1791C issue. First, I would argue that the government is not reading the word out of the statute. Such means of the same class, type, or sort. That is a definition of the word such. Also means specific in certain instances. If you look at the sentencing scheme that Congress set out in 1791, clearly, Congress intended to punish prison contraband cases involving the introduction or possession of controlled substances much more severely than the possession or introduction of other prohibited items. And within the universe of controlled substances, Congress delineated some controlled substance to be treated even more seriously. So there's a distinction in 1791B between the statutory maximum sentences available when the prison contraband case involves drugs as opposed to non-drugs and then marijuana as opposed to narcotics or methamphetamine. And clearly, narcotics and methamphetamine are punished the most severely under 1791B in terms of the statutory maximum available to the court. We then get to 1791C, which talks about mandating consecutive sentences in certain instances. The first sentence clearly addresses the situation where controlled substances are involved. And there is another sentence imposed by any court. The second sentence we can essentially put aside because that distinguishes between offenses committed by persons outside the prison and offenses committed by inmates. So with respect to the sentencing scheme that Congress set out under 1791, I think it would be fair to say that Congress viewed the introduction and possession of drugs more seriously than anything else. And I think it would also be fair to say that if some drugs are bad, more drugs are worse. And it is equally a rule of statutory construction that courts should not read a statute to produce absurd or illogical results. What I argued in my brief and what I'm arguing to the court today is precisely the facts that we had in this case where you have a defendant who takes one quantity of drugs, one lot of drugs, and does two things with it. He possesses it and he provides it to another inmate. The defendant concedes. He is subject to consecutive sentencing for those two counts. You then go to count four where you have the second introduction of a quantity of controlled substance into the prison by the same defendant. In this instance, it's the same type. And it happens to be the same type. It happens to be marijuana again. Reading 1791C in light of the congressional purpose to punish more severely the introduction and possession of controlled substances in a prison, you would read the statute as authorizing consecutive sentences where there was a second introduction of controlled substances into the prison. If you read it otherwise, you reach an illogical result. I mean, clearly a defendant whose syrianum introduces controlled substances into a facility over and over and over again and happens to be caught and is charged with, say, two or three introductions of a controlled substance into a prison. That situation is one where, looking at what Congress did and the way it drafted the statute, you would say, of course they meant for him to get consecutive sentences for each subsequent introduction of a controlled substance into the facility. Well, it's got to be limited in some way when it says such a controlled substance. Otherwise, you wouldn't have such at all. I mean, it's not just involving a controlled substance. I mean, what do you think such means? I think, again, I think such means of the same class, type, or sort. In a sense, it's surplusage. In a sense, all they're saying is we're talking about a controlled substance. We're talking about controlled substances. Well, why wouldn't it make more sense to say, look, you're going to get punished for the possession when you receive the controlled substance, but if you distribute it within the prison, then we're going to make it mandatory that you're going to have a consecutive sentence for that because we want to punish distribution particularly. In other words, the goal would be to say, look, we want to make it clear, if you get some marijuana in or whatever controlled substance and you then distribute it, you're going to get hit twice. The deterrence is for distributing it within the prison as opposed to taking the punishment just for the possession. I mean, doesn't such make sense in that context? If that's the behavior Congress wants to say, look, we want to make sure we put a cap on distribution within the prison? Certainly it does, Your Honor. But, again, the initial crime that Congress was addressing was the introduction of that controlled substance into the prison. It can't be distributed into the prison by an inmate unless he gets it in there. Right, but there's an additional crime for distribution once you've received it in the prison. I mean, you can get it for personal use, obviously, and then don't sell it. But if you're trafficking in the prison, it seems to me that's probably an aim that Congress might have had to say, we want to stop prison trafficking and make sure that if you do that, your sentence is going to be consecutive to mere possession. I mean, that's an interpretation. That's an interpretation. And, of course, the other way to stop trafficking is to prohibit the defendant from even getting it into the prison in the first place. But, you know, if you take on my thesis, then that avoids the argument that it's double counting, it's the same offense, you should make it concurrent rather than consecutive. But Congress is saying, no, if you take drugs in the prison and you distribute it, you've got to make that concurrent. I'm sorry, consecutive. To me, that's where the logic comes into place, because why wouldn't Congress then also be concerned about this defendant who continues seriatim to introduce controlled substances into the prison, whether he does it for his own personal use or for distribution to another inmate. I mean, isn't that equally bad? Isn't that something as deserving of? Well, perhaps. But that is captured, at least, in terms of punishment. And distribution isn't separately considered apart from possession and statute. I mean, they're both crimes. They're both crimes. Right. And, you know, I guess the other thing. But in the scheme of things, sale is punished more harshly than possession. It makes a certain amount of sense. I haven't come to rest on this. I'm just telling you that's the alternative thesis I see. And I guess, you know. You said that the final sentence has no relevance to this case. If the second violation were entirely separate and the inmate were at that time serving a sentence for a drug violation and then he was charged again with a second violation of drugs, you say the second sentence has no effect on that? Oh, no. It has an effect, but that's not what happened in this case. No, no. I understand. Clearly, Judge, we could have waited. We could have charged Mr. Joseph with counts one and two. And then four separate. And waited until he was sentenced and then charged him with counts four. Okay. I'm sorry. All right. So this parade of horribles you've suggested of somebody who comes in, gets convicted of getting marijuana in the prison, then goes out and does it a month later, you do have consecutive sentences there if you just wait and charge him a month later, right? We could do that. But, you know, at some point that's going to start impacting our judicial economy. And I think if the judge is going to say, you know, government, what are you doing in this case? Right, but we're talking about what Congress is thinking. And so Congress may not have contemplated that you were going to charge all these offenses in one document as opposed to separately. Possible. And also, you know, you've got a judge who has the discretion to impose a consecutive sentence when it seems appropriate. So you're not losing a lot. It's just not required. Right. The judge does not require it. And you have a pretty good argument along your train of thinking if you've got somebody who's bringing drugs in seriatim. That's a pretty good argument for consecutive sentences. Just even appealing to the discretion of the judge. The question is why would Congress want to make it mandatory? And you've given us a plausible reason. I'm just giving you, you know, another plausible reason or explanation. Okay, thank you. We're way over. Thank you, Judge. We'll give you two minutes. I won't use the two minutes unless Your Honor has questions because I think you've addressed many of my points in your discussion with the U.S. attorney on this. Just quickly, as to the TAPIA issue, the reason I point to this form, which I totally agree with, this is a form made to just calculate statistics for the judge, but unfortunately they have to fill it out. But if you look at the gestalt of what happened, of what the judge was saying orally and what the judge said in the written document, which may just be for calculating data, then that's what we're pointing it out as. Let me read you the sentence. To show that the district court's error affected her substantial rights, TAPIA must demonstrate a reasonable probability that she would have received a different sentence if the district court had not erred. Do you think that there is a reasonable probability that had the district court in this case not given that reason, the sentence would have been different? Absolutely, Your Honor. First of all, we don't have to prove that the sentence would have to have been different under the case law. Your Honor wrote that case law. Yes, I wouldn't let you run. That's what it means. But, Your Honor, here we have a variance. We have an issue which was already taken into account by the guidelines. There was no need to vary for that issue. Then we have these markings, we have what the court said, and we have a variance upward. You put that all together, it's no different than TAPIA, where the court found that the proof had been shown sufficiently to warrant a reversal under the plain error standard, and TAPIA was plain error. As to the points with the contraband being brought into the prison, the government makes the argument that the statute was written to prevent drugs coming into the prison. That's not true. That is Part B of the statute. There are two prongs of the statute. The first prong punishes exactly what you're talking about. I haven't come to rest on it yet. But there's two parts, two criminal actions of the statute. One is bringing in the contraband. The other is an inmate giving it to another inmate. And you can be charged under both sections, which is what happened in this case. He was charged for bringing in the contraband in Count 1. Count 2 was the distribution to another inmate. And for that, we totally agree. You get a consecutive sentence. The problem is what you do with the event that occurred after that, Count 4, and, again, I think there has to be a meaning to the word such. It can't be read out of the statute. It's a very odd word to put there, and I would ask the court not to read it out of the statute, to give it some meaning. And then, you know, we go back, and the court can easily justify, if it wishes, a consecutive sentence. But I think we're past the days, I hope we're past the days, where we uphold mandatory laws and consecutive sentences written by the Congress and let the judges have their power, have their discretion. And I think this is a statute that allows that. Thank you. Thank you, counsel. The case this time will be with the...
judges: Reinhardt, Thomas, Paez